UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| LILIANA COBOS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. H-13-02897 |
| | § | |
| JOHN KERRY, SECRETARY OF STATE, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM AND OPINION ENTERING FINDINGS OF FACT AND CONCLUSIONS OF LAW

The plaintiff, Liliana Cobos, sought a declaratory judgment that she was a United States citizen by birth and entitled to have the defendant, the Secretary of State, issue her a passport. The Secretary denied her passport application on the ground that Cobos was born in Mexico. The issue is whether the plaintiff has met her burden under 8 U.S.C. § 1503(a) to prove by a preponderance of the evidence that she was born in the United States.

After a two-day bench trial, the court entered findings of fact and conclusions of law from the bench on June 25, 2015. In this memorandum and opinion, issued in accordance with the oral ruling, the court finds and concludes that Liliana Cobos met her burden of proving by a preponderance of the evidence that she was born in the United States.[1]

### Findings of Fact

The parties agree that Liliana Cobos was born on November 9, 1973. They dispute whether she was born in McAllen, Texas, as she contends, or in Reynosa, Mexico, as the

---

[1] Any fact findings that are conclusions of law are entered as such and have that effect, and any conclusions of law that are fact findings are entered as such and have that effect.

1

Secretary contends. While much of the evidence was inconsistent and some of the testimony was not credible, the credible testimony, in particular that of Juanita Olachia Jones, who witnessed Liliana Cobos's birth, and the documents consistent with that testimony, show by a preponderance of the evidence that Liliana Cobos was born in McAllen, Texas.

Liliana Cobos's parents, Emma Guadelupe Portes Rodriguez and Javier Cobos Portes, testified that they lived in Monterrey, Mexico while Emma was pregnant with Liliana, her first child. According to them, Javier's uncle, Matias Tirado, encouraged Emma to cross the border to McAllen—where he had been working and was renting a home—so that the child would be a United States citizen by birth. Emma testified that she traveled from Reynosa to McAllen two to three weeks before Liliana's birth. Javier Cobos, Emma's husband and Liliana's father, was living and working in Houston at that time. Emma testified that she stayed in McAllen with Matias Tirado and his wife, Maria Elena Tirado, and gave birth in their home.

Both Javier and Emma testified that Javier was in Houston when Emma went into labor and did not join his wife until two days after Liliana's birth. Emma testified that they had planned on going to Houston together after the birth, but Javier had not found a suitable place for the family. Instead, Emma returned to Mexico with Liliana, and Javier followed soon thereafter.

On November 17, 1973, Emma and Javier registered Liliana's birth in Mexico and obtained a Mexican birth certificate identifying Liliana's birthplace as Guadalupe, Nuevo Leon, Mexico. They contend that they obtained the false Mexican birth record despite Liliana's United States birth because they wanted her to have access to medical care, education, and vaccinations in Mexico while they were there temporarily and after they were able to return to Mexico to live. Emma and Javier testified that they went through this same process for two of Liliana's brothers, Julian and Gabriel. Emma testified that she and Javier were still living in Mexico when she went

2

to McAllen to give birth to Julian in 1975 and Gabriel in 1976. A few days after each birth, Emma returned to Mexico and obtained false Mexican birth certificates for each baby.

Emma and Javier did not obtain Texas birth certificates for Liliana or her brothers until after the family moved to Houston, Texas from Mexico in 1978. After they moved, Emma and Javier wanted to enroll Liliana, then five years old, in elementary school. At the time, Texas law required proof of legal residency before a child could attend public school.[2] Emma and Javier sought a delayed birth certificate for Liliana. Texas issued the certificate on October 7, 1980, showing her birthplace as McAllen, Texas. Emma and Javier testified that they used baptism certificates and affidavits from Liliana's birth witnesses to show her birth in McAllen to obtain the delayed Texas birth certificate.

Liliana's parents were in many ways not credible witnesses. The documents in the record showed that they misstated facts in the documents submitted to the Mexican government and in some documents submitted to Texas authorities. They had difficulty remembering details such as addresses and dates. Some of the reasons Emma gave to explain her decisions to obtain false Mexican birth records for her United States-born children were implausible. She testified, for example, that she believed reports that if her male children stayed in the United States, they would be drafted and sent to war, despite the fact that the Vietnam War and the draft had ended years earlier.

At the same time, however, the passage of time explains much of Emma's and Javier's inability to recall precise details. Their lack of sophistication and education is a partial explanation for Emma's gullibility. The issue in this case is the testimony and documents about what happened just before and after Emma gave birth to Liliana, as evidence of where that

---

2 The Supreme Court held this requirement unconstitutional in 1982. *See Plyler v. Doe*, 457 U.S. 202 (1982).

occurred. Other witnesses, as well as documents in the record, lend credibility to Emma's clear testimony that she came to the United States right before Liliana's birth, left shortly after the birth, and initially obtained a Mexican birth certificate instead of a Texas birth certificate because she intended to remain in Mexico both in the near term and eventually to live, and she wanted Liliana to have the benefits of Mexican citizenship.

Matias Tirado testified through deposition that he lived sometimes in McAllen, Texas and sometimes in Mexico and that Liliana Cobos was born in his home in the United States while he was living and working there. He testified that his wife, Maria Elena Tirado,[3] was present with him in their rented McAllen house when Liliana was born. Matias Tirado's testimony was confused and unclear on some points, but his testimony about Liliana's birth supports the plaintiff. The court finds Matias Tirado's testimony credible and entitled to weight on this issue.

Maria Elena Cobos,[4] the plaintiff's aunt, also testified. Her testimony neither adds to nor subtracts from the plaintiff's evidence. Liliana sought Maria Elena Cobos's help in applying for a United States passport in 2008, after she learned from her mother, Emma, that "Aunt Maria Elena" had witnessed her birth in McAllen. Maria Elena Cobos signed a no-questions-asked affidavit in support of Liliana's passport application. The affidavit stated—falsely—that Maria Elena Cobos had been present at Liliana's birth in McAllen. When Maria Elena Cobos learned that she would be deposed in this case, she recanted the affidavit statements. She testified at the trial that she did not witness Liliana's birth and signed the affidavit either in blank, or without understanding the English-only handwritten statements it contained.

---

3  Maria Elena Tirado died in 1992.
4 Maria Elena Cobos shares the same first and middle name as the plaintiff's great aunt, Maria Elena Tirado, who is now deceased.

Liliana Cobos does not dispute this testimony. She acknowledges that she misunderstood which "Aunt Maria Elena" had been present at her birth and that the affidavit she procured from Maria Elena Cobos was false. Liliana Cobos credibly testified that when Maria Elena Cobos was subpoenaed to testify in this case and told Liliana that in fact she was not at the birth, Liliana instructed her to tell the truth.

Maria Elena Cobos's affidavit is discredited. Apart from credibly testifying that the information in the affidavit was not true, however, Maria Elena Cobos's testimony is not helpful to determining whether Liliana was, in fact, born in McAllen.[5] Even though Maria Elena Cobos did not witness Liliana's birth in McAllen, Liliana could still have been born there.

Maria Elena Cobos's husband, Guadelupe Cobos Portes, testified by deposition. He testified that he did not think that Mexican citizens whose male children were born in the United States would falsely register those births in Mexico to avoid the draft. He testified that his father would disapprove of Javier "bothering" Matias Tirado by having a child at the McAllen home Matias rented. But he also credibly testified that he remembered that Liliana was born in the United States, confirmed that he did not have to be present in Mexico to serve as a witness to Gabriel Cobos's Mexican birth certificate, and confirmed that he had served as a witness to that Mexican birth certificate despite knowing that Gabriel was born in the United States. His testimony has aspects that both parties cite, but the relevant testimony is largely consistent with

---

5 The Secretary argues that Maria Elena Cobos's testimony shows that she was asked by Liliana to testify falsely about Liliana's birth. Maria Elena Cobos's testimony about the affidavit is so inconsistent that it neither supports nor contradicts the Secretary's argument. She testified that Liliana's parents brought her the passport-application affidavit to sign even though they were in Mexico at that time. Liliana credibly testified that she mailed the affidavit to Maria Elena. Maria Elena also testified that she could not read the handwritten English on the form and that she thought her signature meant only that she knew Liliana. She also testified that she could read the handwritten statements in the affidavit but did not understand them well and did not understand the legal consequence of executing an affidavit with those statements. And finally, she testified that the affidavit form she signed was blank. But she did not testify as to facts showing that Liliana, as opposed to her parents, knew that the affidavit was false when it was obtained.

the evidence the plaintiff relies on.

Liliana Cobos, the plaintiff, also testified. Her testimony was credible. Liliana testified that her mother had always told her she was born in McAllen. Liliana testified that she mistakenly thought that "Aunt Maria Elena" was Maria Elena Cobos, rather than Maria Elena Tirado, based on what her mother told her. She also credibly testified that she sought Maria Elena Cobos's help under this mistaken belief because her mother was in Mexico at the time and could not provide an affidavit by the passport-application deadline.

At the same time, Liliana is clearly an interested witness. Her testimony and certain documents she filed were inconsistent. For example, in each of her passport applications, Liliana listed Texas as her mother's place of birth, which she now acknowledges was incorrect. But the Texas birth certificate Emma obtained for Liliana has the same inaccuracy. Liliana's passport applications also listed a family address in Edinburg, Texas during years when they were living in Mexico or in other parts of Texas. Liliana testified that she obtained this information from her father. The inconsistencies are almost all attributable to information Liliana received from her parents and do not undermine her credibility.

Without more evidence supporting the plaintiff, the court likely would not find that she rebutted the presumption of alienage created by the contemporaneous Mexican birth record and proved her United States birth by a preponderance of evidence. But there is more evidence. Juanita Olachia Jones credibly testified that she was present at Liliana's birth in the United States. Jones, now 86 years old, testified that she was supposed to be a midwife for Emma during the birth, but that she was in Reynosa, Mexico, when Emma went into labor. A woman

named Sofia Gonzalez,[6] who was the wife of Javier Cobos's employer, filled in as midwife. Although Jones was unable to travel from Reynosa to McAllen, where she lived, in time to help Emma during her labor, she arrived in time to witness the birth and to bathe the newly delivered baby. Jones testified that she had no doubt that she was in the United States when she bathed Liliana after the birth. The court finds her testimony credible.

  The Secretary argues that Jones's testimony about certain details was inconsistent. But those details are neither material nor likely to remain clear after 43 years. Jones's testimony was consistent on every important issue. Jones testified clearly and consistently that she was supposed to be at Liliana's birth to help during Emma's labor and that she did arrive in time for the delivery. Her recollection of critical details, her clarity of explanation, and her consistency in describing what happened support her testimony, especially when considered with the consistent record evidence.

  Jones's ongoing relationship with the Cobos family is a factor to consider in weighing her testimony, but it does not undermine her credibility. Her relationship with the family helps explain why she remembered Liliana's birth so many years later. And although she was close with the family when they first moved to Houston and even hosted them at her home for roughly six months, Jones credibly testified that they had lost touch over the years. Their long-past relationship does not provide the incentive to lie that the Secretary suggests. Jones also demonstrated her lack of bias through her testimony about the 2012 birth affidavit she signed on Liliana's behalf. She credibly testified that she would have refused to sign an affidavit stating that she, rather than Sofia Gonzalez, served as the actual midwife.

  None of the Secretary's other arguments for discounting Jones's testimony about

---

6 Although Emma and Javier successfully obtained an affidavit from Gonzalez to support their application for

Liliana's United States birth requires a different result. First, the Secretary argues that Jones's testimony about whether she was supposed to be the midwife is inconsistent with her acknowledgment that her midwife experience was helping her grandmother, who actually delivered the babies. The Secretary argues that this testimony contradicts Jones's testimony that she was supposed to be the midwife for Liliana. Jones's testimony on this issue is not as contradictory as the government contends. The thrust of Jones's testimony was that she had training as a midwife. She usually worked with her grandmother, who did the deliveries, but she delivered some babies herself. Her testimony that she and Emma discussed Jones delivering Liliana was credible. In any event, the precise details of her arrangement with Emma are tangential to her unequivocal testimony that she was supposed to be in McAllen for the labor and delivery, and that she arrived late but in time to witness the birth and give Liliana her first bath.

Second, the Secretary argues that Jones testified that she saw Emma pregnant with Liliana when she worked at the Houston elementary school that Liliana and her siblings attended. The problem is that Jones did not work there until 1978, five years after Liliana was born. But Jones acknowledged on redirect that it was possible that she had seen Emma pregnant with one of her younger children while Jones worked at the school. Jones's confusion on this issue does not contradict her unequivocal credible testimony that she was present at Liliana's birth in McAllen.

Third, the Secretary argues that the evidence that three of Matias Tirado's own children were born in Mexico, not McAllen, in January 1972, August 1973, and November 1974, undercuts the testimony that Matias Tirado lived in McAllen when Liliana was born in November 1973. But the evidence showed that Maria Elena Tirado may have traveled from

---

Liliana's Texas birth certificate in 1980, neither party was able to locate her for the bench trial.

McAllen while she and Matias lived there to Mexico to have her children. The children were still United States citizens, despite being born in Mexico, because their mother was a citizen.

Fourth, the Secretary points to the testimony of Marcos Tirado, Matias Tirado's son, that as far as he knew, his parents never lived in McAllen, and that he remembered moving from Mexico to San Benito, Texas around 1980. Although Marcos Tirado was a largely credible witness, his equivocal testimony on this issue carries minimal weight. Marcos Tirado was born in 1972 and cannot remember the period in question accurately, if at all. He acknowledged that his father lived in both Reynosa and the United States for years, going back and forth. He acknowledged that he was not certain that his parents did not live in McAllen. Marcos Tirado's testimony was not credible to the extent that it conflicted with Matias Tirado's testimony that he rented and lived in a home in McAllen when Liliana was born. Documents in evidence showed that Matias Tirado received a visa from the Mexican consulate in McAllen in 1978, before Marcos thought that his father had been to the United States. The credible testimony of other witnesses, including Jones, is consistent with Matias Tirado's account.

Fifth, the Secretary points to Liliana's Mexican birth certificate, filed eight days after her birthdate. This contemporaneous birth certificate in a foreign country is almost conclusive evidence of alienage. Liliana Cobos admits that her parents obtained a Mexican birth certificate for her shortly after her birth and failed to obtain a Texas birth certificate until several years later. As noted, Emma credibly testified that she and Javier got the Mexican birth certificate so that Liliana could receive medical care, education, and vaccinations when she and her mother returned to Mexico after the birth and when the family lived there, and delayed getting the United States birth certificate until they needed it for Liliana to attend school.

Emma and Javier testified that they paid people to serve as witnesses to Liliana's

9

Mexican birth. Yolanda Vargas was listed as a witness on both Liliana's and Julian's Mexican birth certificates even though Emma and Javier had met her only once, when they paid her to falsely attest that she witnessed Liliana's birth in Mexico. Evidence in the record shows that Emma and Javier recycled Vargas's name to support Julian's Mexican birth certificate without her presence. Similarly, Emma and Javier listed Guadelupe Cobos and Maria Elena Cobos as witnesses to Gabriel's Mexican birth to obtain the Mexican birth record, even though Guadelupe and Maria Elena testified that they were not present at either Gabriel's birth or the registration proceeding and that Gabriel was born in the United States.

Despite the contemporaneous foreign birth certificate and the delayed Texas birth certificate, the credible evidence as to the circumstances and place of Liliana's birth leads the court to find that the plaintiff has rebutted the presumption of alienage and proven by a preponderance of the evidence that she is a United States citizen by birth.

Considering the testimony and exhibits admitted into the record, and for the additional reasons stated on the record on June 25, 2015, the court finds that the plaintiff, Liliana Cobos, met her burden of proving by a preponderance of the evidence that she was born in this country, is a citizen by birth, and is entitled to a United States passport.

## Conclusions of Law

Title 8 U.S.C. § 1503(a) allows any person denied a right or privilege because she is not a United States national to file a declaratory judgment action for a *de novo* determination of citizenship. *See Vance v. Terrazas*, 444 U.S. 252, 256 (1980).

There are "two sources of citizenship, and two only: birth and naturalization." *Miller v. Albright*, 523 U.S. 420, 423-34 (1998) (quoting *United States v. Wong Kim Ark*, 169 U.S. 649, 702 (1898)). Because the issue is citizenship based on United States birth, the plaintiff has the

burden of proving, by a preponderance of the evidence, that she was born in the United States. *See Bustamante-Barrera*, 447 F.3d 388, 394 (5th Cir. 2006); *Reyes v. Neely*, 264 F.2d 673, 674-75 (5th Cir. 1959); *Tijerina v. Brownell*, 141 F. Supp. 266, 270 (S.D. Tex. 1956); *Patel v. Rice,* 403 F. Supp. 2d 560, 562 (N.D. Tex. 2005). Proving a fact by a preponderance of the evidence means showing that the existence of said fact is more likely than not. *Herman & MacLean v. Huddleston*, 459 U.S. 375, 390 (1983); *Matter of Briscoe Enterprises, Ltd. II*, 994 F.2d 1160, 1164 (5th Cir. 1993).

There is no burden shifting analysis in this proceeding. The burden does not shift to the government to either produce evidence demonstrating that the plaintiff was born outside the United States or discrediting all of the plaintiff's evidence after she has made a *prima facie* showing of United States citizenship. *See Patel*, 403 F. Supp. 2d at 562; *Pena-Sanchez v. Clinton*, No. 11-cv-00125, Order, ECF No. 34, at 2 (S.D. Texas March 28, 2013). The court must resolve doubts "in favor of the United States" and against those seeking citizenship. *See Bustamante-Barrera*, 447 F.3d at 395, citing *Berenyi v. District Director*, 385 U.S. 630, 637 (1967). The court may not grant citizenship out of equity or in the interests of justice. A person is a United States citizen only by the manners and means prescribed by Congress. *See INS v. Pangilinan*, 486 U.S. 875, 883-84 (1988); *Pena-Sanchez*, *supra*, at 3. A sincere belief of United States birth does not make it so. *Beltran v. Rivera*, No. 10-24288, ECF No. 48 at 8 (S.D. Fla. July 6, 2012).

A birth record that is contemporaneously filed with birth is generally considered to be "almost conclusive evidence of birth." *See Liacakos v. Kennedy*, 195 F. Supp. 630, 631 (D. D.C. 1961). A contemporaneously filed foreign birth record creates a presumption of alienage. *See Rivera v. Albright*, 99-C-328, 2000 WL 1514075, at *3 (N.D. Ill. Oct. 11, 2000); *Garcia v.*

*Clinton*, 2012 WL 6202196, at *2 (S.D. Tex. Dec. 12, 2012); *Pena-Sanchez*, *supra*, at 4-5 (giving more evidentiary weight to a 1971 Mexican birth certificate rather than a 1974 Texas birth certificate). Contemporaneous is defined as "[b]elonging to the same time or period; existing or occurring at the same time." *Oxford English Dictionary Online,* www.oed.com; *see also Merriam-Webster Dictionary Online*, www.merriam-webster.com (defining contemporaneous as "existing, occurring, or originating during the same time."); *Webster's New Collegiate Dictionary* 245 (1975) (defining contemporaneous as "existing, occurring, or originating during the same time."). In *Beltran*, the court found that a Mexican birth record issued within eleven days of a birth was contemporaneous and gave less evidentiary weight to a Texas birth certificate issued afterwards. *Beltran*, No. 10-24288, ECF No. 48, at 5.

An application to register a birth that occurred more than four years but less than fifteen years before the application for registration is considered one type of delayed Texas birth certificate. *See* Texas Health and Safety Code §§ 192.024 & 192.025(c). Although under Texas law a certified delayed birth record is *prima facie* evidence of the facts stated in that record, *see De La Cruz v. Clinton*, No. 11-675, 2012 WL 1941373, at *4 (W.D. Tex. May 29, 2012), that evidence is rebuttable. *See Garcia v. Clinton*, 2012 WL 6202196, at *2 (S.D. Tex. Dec. 12, 2012), citing, 22 C.F.R. § 51.42-51.44; *Pinto-Vidal v. Attorney General*, 680 F. Supp. 2d 861, 862 (S.D. Tex. 1987). *Prima facie* evidence refers only to "a minimum quantity," enough to raise either "a presumption of fact, or that, which is sufficient, when unrebutted, to establish the fact." *Id*.; *see also Marker v. Prudential Ins. Co. of America*, 273 F.2d 258, 264 (5th Cir. 1960); *Tindle v. Celebrezze*, 210 F. Supp. 912 (S.D. Cal. 1962). Courts have found that a delayed birth certificate is either entitled to less evidentiary weight than a contemporaneously filed birth certificate (*see Liacakos*, 195 F. Supp. at 631), or to no evidentiary weight, *see Patel*, 403 F.

Supp. 2d at 564, particularly when other evidence indicates foreign birth or when the plaintiff can only provide self-serving attestations of United States birth. *See De Vargas v. Brownell*, 251 F.2d 869, 871-72 (5th Cir. 1958); *Reyes*, 264 F.2d at 674; *Escalante v. Clinton*, 386 Fed. Appx. 493 (5th Cir. 2010).

A court may consider testimonial evidence in a section 1503 proceeding, but testimony of an interested witness is entitled to less evidentiary weight   *See*, *e.g.*, *Patel*, 403 F. Supp. 2d at 565-66; *Ng Kwock Gee v. Dulles*, 221 F.2d 942, 943-44 (9th Cir. 1955); *see De Vargas*, 251 F.2d at 872; *Patel*, 403 F. Supp. 2d at 565-66.   In this case, the court found credible the testimony of a disinterested witness, Juanita Olachia Jones, that the plaintiff was born in McAllen, Texas. The other credible testimony was consistent with Jones's testimony and with the plaintiff's evidence.

The testimony and evidence supporting Liliana Cobos's account of her birth in McAllen, Texas, in particular the credible testimony of Juanita Olachia Jones that she was present when Liliana was born in the United States, leads this court to conclude that she has rebutted the presumption of alienage from the contemporaneously filed foreign birth certificate and that she was in fact born in McAllen, Texas.

This court concludes that Liliana Cobos has met her burden of proof.   She is a citizen by birth.  On the record before this court, she is entitled to a United States passport.

A final declaratory judgment is issued in favor of Liliana Cobos by separate order.

Signed at Houston, Texas on June 30, 2015.

_____
                    LEE H. ROSENTHAL
             UNITED STATES DISTRICT JUDGE